UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL DAVIS,

    Plaintiff,

    v.

HOLLINS LAW, A PROFESSIONAL CORPORATION,

    Defendant.

NO. CIV. S-12-3107 LKK/GGH

O R D E R

Plaintiff Michael Davis sues defendant Hollins Law, A Professional Corporation, alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692p ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 - 1788.33 ("Rosenthal Act").

Defendant has filed motions to dismiss and/or to strike plaintiff's second cause of action, which is brought under the Rosenthal Act. This matter was originally set for hearing on March 11, 2013. It has been decided on the papers submitted.

**I. ALLEGATIONS & BACKGROUND**

In 1977, Congress enacted the FDCPA to "eliminate abusive debt

collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). That same year, the California Legislature enacted the Rosenthal Act "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). In 1999, the California Legislature substantially amended the Rosenthal Act to incorporate many FDCPA provisions by reference, thereby making violations of these provisions into Rosenthal Act violations. Cal. Civ. Code § 1788.17. While the FDCPA authorizes enforcement action by the federal Fair Trade Commission, 15 U.S.C. § 1692l, both statutes largely rely on the efforts of private attorneys to regulate the debt collection industry.

Plaintiff's complaint alleges that defendant telephoned and left him at least one voicemail in an attempt to collect a debt. The challenged voicemail failed to disclose that the communication was from a debt collector.

Plaintiff's complaint asserts (1) violations of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(10) and 1692e(11), and (2) by reference, a violation of the Rosenthal Act, Cal. Civ. Code § 1788.17. (Complaint ¶¶ 17, 22, ECF No. 1.)

Defendant moves to dismiss the Rosenthal Act count under

Federal Rule of Civil Procedure 12(b)(6)[1] for failure to state a claim. In the alternative, defendant moves to dismiss the count under California's anti-SLAPP[2] law, Cal Code Civ. Proc. § 425.16. Defendant also moves to strike this count under Rule 12(f).

**II. STANDARD ON MOTION TO DISMISS UNDER RULE 12(b)(6)**

A dismissal motion under Rule 12(b)(6) challenges a complaint's compliance with federal pleading requirements. Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[3]

"While legal conclusions can provide the framework of a

---

[1] Hereinafter, the term "Rule" refers to the applicable Federal Rule of Civil Procedure.

[2] Strategic Litigation Against Public Participation

[3] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Iqbal and Twombly therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 664.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[4] A complaint

---

[4] Twombly imposed an apparently-new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of Facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per

4

may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS**

**A. Is defendant subject to the Rosenthal Act?**

Defendant argues that it cannot be held liable under the Rosenthal Act. I cannot agree.

According to Cal. Civ. Code § 1788.2(c), the term "debt collector" does not include an attorney or counselor at law. Defendant contends that the phrase "attorney" necessarily encompasses law firms, and therefore, that it is outside the ambit of the Rosenthal Act.

Defendant's argument is largely based on the California Court of Appeals' opinion in Carney v. Rotkin, Schmerin & McIntyre, 206 Cal. App. 3d 1513 (1988) (Kennard, J.).[5]

Two federal judges in California have relied on Carney to hold that the Rosenthal Act does not apply to law firms. See Owings v. Hunt & Henriques, No. 08cv1931-L, 2010 WL 3489342, 2010 U.S. Dist. LEXIS 91819 (S.D. Cal. Sep. 3, 2010) (Lorenz, J.); Minasyan v.

---

curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), rehearing *en banc* denied, 659 F.3d 850 (October 5, 2011). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

[5] Research has failed to uncover any other opinion of the California courts, published or unpublished, that addresses this question.

5

1  Creditors Financial Group, No. 2:12-cv-01864, 2012 WL 2328242, 2012
2  U.S. Dist. LEXIS 85092 (C.D. Cal. Jun. 19, 2012) (Wright, J.);
3  Ayvazian v. Moore Law Group, No. 2:12-CV-01506, 2012 WL 2411181,
4  2012 U.S. Dist. LEXIS 88556 (C.D. Cal. Jun. 26, 2012) (Wright, J.).
5       On the other hand, at least nine federal judges in California
6  have held that the Rosenthal Act *does* apply to law firms. See Abels
7  v. JBC Legal Group, P.C., 227 F.R.D. 541, 548 (N.D. Cal. 2005)
8  (Ware, J.); Navarro v. Eskanos & Adler, No. 06-02231, 2007 WL
9  549904, 2007 U.S. Dist. LEXIS 15046 (N.D. Cal. Feb. 20, 2007)
10 (Alsup, J.); Owens v. Brachfeld, No. 07-4400, 2008 WL 3891958, 2008
11 U.S. Dist. LEXIS 63701 (N.D. Cal. Aug. 19, 2008) (Fogel, J.);
12 Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051
13 (C.D. Cal. 2009) (Pregerson, J.); Miranda v. Law Office of D. Scott
14 Carruthers, No. 1:10-01487, 2011 WL 2037556, 2011 U.S. Dist. LEXIS
15 55180 (E.D. Cal. May 23, 2011) (Wanger, J.); Moriarty v. Henriques,
16 No. 1:11-1208, 2011 WL 4769270, 2011 U.S. Dist. LEXIS 90442 (E.D.
17 Cal. Oct. 7, 2011) (Thurston, M.J.); Bautista v. Hunt & Henriques,
18 No. 11-4010, 2012 WL 160252, 2012 U.S. Dist. LEXIS 5009 (N.D. Cal.
19 Jan. 17, 2012) (Spero, M.J.); Silva v. Jason Head, PLC,
20 No. 09-05768, 2010 WL 4593704, 2010 U.S. Dist. LEXIS 121557 (N.D.
21 Cal Nov. 4, 2010) (Koh, J.); Reimann v. Brachfeld, No. 10-4156,
22 2010 WL 5141858, 2010 U.S. Dist. LEXIS 131727 (N.D. Cal. Dec. 13,
23 2010) (Seeborg, J.).    However, none of these decisions cites or
24 appears to have considered Carney. Instead, the majority follow the
25 reasoning of Abels, 227 F.R.D. at 548, that "[s]ince the
26 [California] legislature specifically excluded attorneys from the

statute but was silent on law firms . . . the legislature did not intend to exclude law firms."

In Carney, 206 Cal. App. 3d at 1513, two employees of a debt collection law firm (a secretary and an attorney) falsely represented to plaintiff that a bench warrant had issued for her arrest and that the warrant would remain in effect until she paid the sum demanded by the law firm. Plaintiff sued the law firm, the secretary, the attorney, and the original creditor, alleging causes of action for infliction of emotional distress, abuse of process, and Rosenthal Act violations. The trial court sustained defendants' demurrer and dismissed the complaint in its entirety. The appeals court partially reversed the trial court's order, holding that defendant's conduct was not subject to the litigation privilege articulated in Cal. Civ. Code § 47, and that plaintiff had properly stated claims for intentional and negligent infliction of emotional distress.

The majority of the Carney opinion deals with the foregoing issues. The portion that defendant and the Owings, Minasyan, and Ayvazian courts rely upon is brief and worth reproducing in full:

> Plaintiff's fourth cause of action alleges that, in telling her "non-payment of her debt would result in her arrest when in fact such action was not contemplated and not permitted by law," defendants violated the Fair Debt Collection Practices Act, particularly subdivision (e) of Civil Code section 1788.10. However, the Act applies only to "debt collectors"; it specifically exempts attorneys from its coverage. (Civ.Code, § 1788.2, subd. (c).) Here, the complaint shows on its face that defendant attorney was not a "debt collector" within the meaning of the Act. No amendment to the complaint could establish otherwise. Therefore, the trial court properly sustained defendants' demurrer to the fourth cause of

7

1 action without leave to amend.

2 Carney, 206 Cal. App. 3d at 1526. In other words, the appeals court
3 did not find that the term "attorney" includes law firms, or even
4 discuss the issue. Nor can one infer with any certainty that Carney
5 implicitly makes such a finding. The opinion does not make clear
6 whether the plaintiff brought a Rosenthal Act claim against the
7 defendant law firm; it is entirely possible that only the attorney
8 was named, and that the use of the plural possessive in the phrase
9 "defendants' demurrer to the fourth cause of action" merely
10 reflects the fact that the defendants collectively demurred to the
11 complaint (rather than each defendant individually demurring to the
12 claims brought against him, her, or it). As such, Carney is simply
13 not persuasive precedent for the proposition that the Rosenthal Act
14 exempts law firms from the definition of "debt collector."

15 The court now turns to construction of the statute. "In
16 construing a state law, we follow the decisions of the state's
17 highest court. The Erie principles apply equally in the context of
18 pendent jurisdiction." Mangold v. Cal. Pub. Utilities Comm'n, 67
19 F.3d 1470, 1478 (9th Cir. 1995) (internal citations and quotations
20 omitted). In the Ninth Circuit, a federal court applying state law
21 must utilize the tools of statutory interpretation prescribed by
22 the relevant state supreme court. See Oregon Advocacy Ctr. v. Mink,
23 322 F.3d 1101, 1114 n.7 (9th Cir. 2003) (applying interpretive
24 framework announced by Oregon Supreme Court to Oregon statute);
25 Nike, Inc. v. McCarthy, 379 F.3d 576, 581 n.4 (9th Cir. 2004)
26 (same).

The California Supreme Court has set forth the following principles of statutory construction:

> Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. We must look to the statute's words and give them their usual and ordinary meaning. The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, statutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [...] If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.

People v. Arias, 45 Cal. 4th 169, 177 (2008) (internal citations and quotations omitted). "To determine the most reasonable interpretation of a statute, we look to its legislative history and background." Goodman v. Lozano, 47 Cal. 4th 1327, 1332 (2010).

I turn to the task of construction.

### 1. Plain meaning[6]

One difficulty in ascertaining the statute's plain meaning is that the lay dictionaries commonly consulted by this court, such as Webster's (1976 & 2012) and the Oxford English Dictionary (2012), do not define the term "law firm." Black's Law Dictionary (9th Ed. 2010) defines "attorney" as "one who is designated to transact business for another; a legal agent," and "[a] person who

---

[6] The California Supreme Court consults both lay and legal dictionaries in construing the plain meaning of statutes. See, e.g., In re Ethan C., 54 Cal. 4th 610, 627 (2012) (examining Oxford English Dictionary and Black's Law Dictionary to construe the word "neglect").

9

practices law." Black's defines "law firm" as "[a]n association of lawyers who practice law together, usu. sharing clients and profits, in a business organized traditionally as a partnership but often today as either a professional corporation or a limited-liability company." Id. That is, "attorney" refers to a single individual "who practices law," while "law firm" refers to multiple individuals "who practice law together." Id.

**2. Statutory context**

This distinction – between the singular noun "attorney" and the collective noun "law firm" – is reinforced by examining related statutes and regulations. To begin with, the terms "attorney" and "lawyer" appear to be largely synonymous under California law.[7] California Rule of Professional Conduct 1-100(B)(3) defines "lawyer" as, among other things, "a member of the State Bar of California . . . ." By contrast, Rule of Professional Conduct 1-100(B)(1) defines "law firm" as:

>    (a) two or more lawyers whose activities constitute the practice of law, and who share its profits, expenses, and liabilities; or
>
>    (b) a law corporation which employs more than one lawyer; or

---

[7] Cal. Bus. & Prof. Code § 6067 provides that "[e]very person on his admission [to the practice of law in California] shall take an oath to support the Constitution of the United States and the Constitution of the State of California, and faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability." A more specialized statute, Cal. Bus. & Prof. Code § 6180.14 (addressing cessation of practice of law) provides that attorney means "a member or former member of the State Bar." And according to a leading treatise on California law, "The title 'attorney' is understood to be synonymous with . . . 'lawyer.'" 7 Cal. Jur. 3d, Attorneys at Law § 1 (2011).

10

   (c) a division, department, office, or group within a business entity, which includes more than one lawyer who performs legal services for the business entity; or

   (d) a publicly funded entity which employs more than one lawyer to perform legal services.[8]

Straightforwardly then, "lawyer" and "law firm" mean different things: the former is a single individual ("a member"), while the latter is a collection of multiple individuals ("two or more lawyers," "more than one lawyer"). This distinction is reinforced by definitions of the term "lawyer" in Cal. Bus. & Prof. Code §§ 6157 (addressing legal advertising) and 6175 (addressing provision of financial services by lawyers). These definitions are nearly identical to that in the Rules of Professional Conduct, except that they contain the addendum, "includes any agent of the **lawyer or law firm** or law corporation doing business in the state." This addendum further reinforces the notion that "lawyers" and "law firms" are distinct concepts.[9]

  Finally, to imply or presume an exception for "law firms" into the statute would run afoul of "the familiar rule of construction,

---

[8] The California Code does not appear to define the term "law firm."

[9] It also bears mention that many California statutes distinguish between "attorneys" and "law firms," further suggesting that the state legislature does not view the former as encompassing the latter. See, e.g., Cal. Bus. & Prof. Code § 6450(a) ("'Paralegal' means a person who [inter alia] either contracts with or is employed by an attorney, law firm, corporation, governmental agency, or other entity . . ."); Cal. Pub. Cont. Code § 10353.5(c)(4) ("'Contract for legal services' shall include any contract between a state agency and any law frm, professional corporation, law firm partnership, or individual attorney to perform legal work . . .").

11

expressio unius est exclusio alterius, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." Wildlife Alive v. Chickering, 18 Cal. 3d 190, 195 (1976).

To summarize, the terms "attorney" and "law firm" have different meanings under relevant provisions of California law, strongly suggesting that the section 1788.2(c) definition of "debt collector" includes law firms.

### 3. Legislative history and public policy

The legislative history of the Rosenthal Act gives no indication of whether "law firms" are included in the term "attorney" under Cal. Civ. Code § 1788(c).

But the legislative history of a related statutory provision – Cal. Bus. & Prof. Code § 6077.5 – indicates that the terms are distinct. The latter statute, enacted seven years after the Rosenthal Act, requires an attorney and "his or her[10] employees who are employed primarily to assist in the collection of a consumer debt" to comply with both the Rosenthal Act and certain other enumerated debt collection practices. Violators are subject to discipline by the State Bar of California, rather than by private action. Cal. Bus. & Prof. Code § 6077.5(i). The legislative history of section 6077.5 provides that "[t]he purpose of this bill is to ensure that attorneys comply with fair debt collection practices when collecting consumer debts. This bill is the result of

---

[10] Again, note the singular pronoun.

12

negotiations between the State Bar and the collection agency industry following an ongoing dispute as to the extent of the attorney exemptions from the [Rosenthal Act.]" California Assembly Office of Research, Concurrence in Senate Amendments (AB 1252 (Calderon)), May 3, 1984, at 1. In other words, the Rosenthal Act's "attorney" exemption does not leave attorneys unregulated; they are instead regulated by the State Bar of California. As there is no similar, alternative regulatory regime for "law firms," to exempt them would undermine the public policy articulated in Cal. Civ. Code § 1788.1(b): "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."

### 4. Conclusion

Given the above, the court finds that the "attorney" exemption from the definition of "debt collector" under the Rosenthal Act does not extend to "law firms."

Therefore, to the extent that defendant's motion to dismiss and motion to strike are premised on the argument that the Rosenthal Act does not apply to law firms, both motions will be denied.

What remains is defendant's argument that its communications with plaintiff constituted protected activity under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16.

////

////

////

13

**B. Is plaintiff's Rosenthal Act claim subject to California's anti-SLAPP law?**

**1. Standard re: anti-SLAPP motion**

Cal. Code Civ. Proc. § 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Under this section, parties "sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail." Verizon Del., Inc. v. Covad Communications Co., 377 F.3d 1081, 1091 (9th Cir. 2004).[11]

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003). First, "the defendant is required to make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir.

---

[11] The panel in Verizon held that "[p]rocedural state laws are not used in federal court if to do so would result in a direct collision with a Federal Rule of Civil Procedure," and gave as an example certain discovery-limiting provisions in California's anti-SLAPP statute. Id. at 1091 (quoting and citing Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 845-46 (9th Cir. 2001)). These discovery provisions are not relevant in this case, nor do there appear to be any other applicable "collision."

14

2003). Second, "[t]he burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her . . .claim." Id. But if defendants fail to meet their initial burden, the court need not reach this step before denying the motion. See Navellier v. Sletten, 29 Cal. 4th 82, 89 ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected speech or petitioning *and* lacks even minimal merit — is a SLAPP, subject to being stricken under the statute") (emphasis in original).

### 2. Analysis

Defendant claims that the voicemail it left for plaintiff (the basis of this lawsuit) was made in connection with anticipated litigation and is therefore protected activity, specifically, an "oral statement . . . made in connection with an issue under consideration or review by a . . . judicial body[.]" Cal. Code Civ. Proc § 425.16(e)(2).

"California courts rightly have rejected the notion that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act . . . ." City of Cotati v. Cashman, 29 Cal. 4th 69, 77 (2002).

A challenged communication is deemed to have been made "in connection with" a lawsuit only if the suit was "under serious consideration" at the time the communication was made. See A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc., 137 Cal. App. 4th 1118, 1128 (2006) (even the "threat of potential legal

1  action [in a challenged communication] is insufficient . . . to
2  demonstrate a lawsuit was under serious consideration"); <u>Welker v.
3  Horwitz</u>, 626 F. Supp. 2d 1068, 1073 (2009) ("Defendant relies on
4  the bald assertion it sent the [challenged] letter 'in the course
5  of litigation,' but fails to submit evidence litigation was under
6  serious consideration").

7      Defendant argues that it left the voicemail "in a good faith
8  effort to collect payment on a debt owed. The challenged
9  communication was made in anticipation of filing a collection
10 action." (Defendant's Memorandum of Points & Authorities in Support
11 of Motion to Dismiss ("Mot. To Dismiss") 7:11-15, ECF No. 6.) In
12 support, defendant's attorney Asal N. Shiraz has submitted a
13 declaration in which she avers that her firm, "as part of its debt
14 collection efforts, files civil actions on an ordinary basis,
15 subsequent to failed attempts to collect debts. My firm attempts
16 to collect debts by sending letters and email and making phone
17 calls to a debtor prior to filing such civil actions." (Dec. Shiraz
18 9:9-13, ECF No. 6.) But neither the points & authorities nor the
19 supporting declaration provide any details about when such an
20 action was to be filed, or what event(s), if any, might trigger its
21 filing.

22     The challenged voicemail was left in August 2012. (Plaintiff's
23 Declaration in Support of Opposition to Motion to Dismiss ¶ 2, ECF
24 No. 10-1.) As of February 19, 2013, no collection action had been
25 filed against plaintiff. (<u>Id.</u> ¶ 6.)

26     Defendant has simply failed to show that litigation against

16

plaintiff was "under serious consideration" at the time it telephoned him. Therefore, defendant fails to "satisf[y] the initial statutory requirement that to constitute a SLAPP the cause of action must arise from the defendant's activity in the furtherance of free speech or petitioning rights." Navellier, 29 Cal. 4th at 89.

Accordingly, the court will deny defendant's motion to dismiss under the anti-SLAPP law.[12]

**IV. CONCLUSION**

The court hereby orders that defendant's motion to dismiss and motion to strike are DENIED.

IT IS SO ORDERED.

DATED:   March 14, 2013.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[12] In reaching this conclusion, the court is also guided by decisions holding that communications alleged to violate the Rosenthal Act are not subject to the litigation privilege. See, e.g., Komarova v. Nat'l Credit Acceptance, 175 Cal. App. 4th 324, 340 (2009) ("We must nonetheless be mindful of the ease with which the [Rosenthal Act] could be circumvented if the litigation privilege applied. In that event, unfair debt collection practices could be immunized merely by filing suit on the debt."); Welker, 699 F. Supp. 2d 1164, 1174 (2010) ("[I]f the Court were to apply the litigation privilege to protect defendant's improper dunning letter, that decision would in effect render the Rosenthal Act inoperable"). These opinions are persuasive in light of precedents holding that the provisions of the anti-SLAPP law which address communications before, or in connection with, a judicial proceeding are co-extensive with the litigation privilege. See, e.g., Ruiz v. Harbor View Cmty. Assn., 134 Cal. App. 4th 1456, 1467, fn. 3 (2005); A.F. Brown, 137 Cal. App. 4th at 1125-26.