UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DAVIS,<br><br>        Plaintiff,<br><br>   v.<br><br>HOLLINS LAW, A PROFESSIONAL CORPORATION,<br><br>        Defendant. | No. CIV. S-12-3107 LKK/AC<br><br><br><br>**ORDER** |

    Plaintiff Michael Davis sues defendant Hollins Law, A Professional Corporation, alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692p ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 - 1788.33 ("Rosenthal Act"). The gravamen of plaintiff's complaint is that defendant placed collection calls to his home phone, and left a voicemail message which failed to disclose that the communication was from a debt collector. The parties have cross-moved for summary judgment.

    The parties' motions came on for hearing on September 9, 2013.

1

Having considered the matter, the court will deny both motions for the reasons set forth below.

**I.  BACKGROUND**

   **A. Factual background**

The undisputed facts are as follows:

- The debt alleged in the complaint herein was incurred on a business credit card. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, ECF No. 47.)
- The credit card in question was an American Express TrueEarnings Business Card (hereinafter, the "American Express card"), which was obtained by plaintiff at Costco. (Defendant's Response to Plaintiff's Statement of Undisputed Facts, ECF No. 51.)
- The American Express card was used to purchase personal items, such as "standard household items bought through Costco," gas purchased at Costco, "Pampers and milk," "a bar tab," and "school books." (Id.)
- Defendant's representative, one "Gregory," placed collection calls to plaintiff to collect a debt owed on the American Express card. (Id.)
- On or around August 29, 2012, defendant's representative, one "Gregory Daulton," placed a telephone call to plaintiff and left plaintiff a voicemail message. (Id.)

Defendant advances a number of evidentiary objections to the remaining undisputed facts advanced by plaintiff in support of his motion. These objections are addressed as necessary below.

////

**B. Procedural background**

Plaintiff's complaint pleads violations of the FDCPA (specifically, 15 U.S.C. §§ 1692e, 1692e(10), and 1692e(11)) and the Rosenthal Act (Cal. Civ. Code § 1788.17). The latter provision specifies that certain FDCPA violations (such as the ones at issue in this case) also constitute Rosenthal Act violations. Each statute allows for a maximum of $1000.00 in statutory damages; plaintiff therefore seeks $2000.00 in damages, and his attorney fees and costs, which are also provided for by statute.

Defendant moves for summary judgment on the grounds that, as plaintiff owed money on a business credit card, the subject obligation is not a "debt" within the meaning of the FDCPA, a consumer protection statute. Therefore, defendant maintains that it cannot be held liable under the FDCPA or the Rosenthal Act (as the latter claim is premised on an FDCPA violation). (ECF No. 35.)

Plaintiff cross-moves for summary judgment, contending that there exists no genuine dispute as to defendant's liability under the FDCPA and the Rosenthal Act.

**II. STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law'"); Walls v. Cent. Contra Costa

3

Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be . . . disputed." Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact")(citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)).

A wrinkle arises when the non-moving party will bear the burden of proof at trial. In that case, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387.

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Oracle Corp., 627 F.3d at 387 (where the moving party meets its

burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls, 653 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

**III. ANALYSIS**

**A. Is the subject obligation a "debt" under the FDCPA?**

Defendant moves for summary judgment, contending that

5

1  collection efforts on a business credit card cannot, as a matter
2  of law, violate the FDCPA and the Rosenthal Act, which are
3  consumer protection statutes. Plaintiff does not dispute that the
4  subject debt was incurred on a business credit card.

5     15 U.S.C. § 1692a(5) defines "debt" as follows: "The term
6  'debt' means any obligation or alleged obligation of a consumer
7  to pay money arising out of a transaction in which the money,
8  property, insurance, or services which are the subject of the
9  transaction are primarily for personal, family, or household
10 purposes, whether or not such obligation has been reduced to
11 judgment."

12    Three Ninth Circuit cases address issues raised by
13 defendant's motion.

14    In <u>Bloom v. I.C. System, Inc.</u>, 972 F.2d 1067 (9th Cir.
15 1992), the appeals court was called upon to interpret section
16 1692a(5) in a case where the plaintiff had borrowed $5000 from a
17 friend and used it to invest in a software company. According to
18 the opinion, the lender "did not necessarily know or care what
19 the money was being used for." <u>Id.</u> at 1068. The lender
20 inadvertently placed the debt for collection with defendant
21 collection agency, which plaintiff then sued for FDCPA
22 violations. The district court granted the defendant's motion for
23 summary judgment, on the grounds that the loan was not a "debt"
24 under section 1692a(5). The Ninth Circuit affirmed, reasoning
25 that "[t]he fact that a loan is informal or that the lender may
26 have loaned the money for personal reasons does not make it a
27 personal loan under the FDCPA. The Act characterizes debt in
28 terms of end uses . . . . Neither the lender's motives nor the

fashion in which the loan is memorialized are dispositive of this inquiry." Id. at 1068. Plaintiff's use of the loan proceeds to invest in a software company meant that the obligation was not for "personal, family, or household purposes," and therefore, was not a "debt" subject to the FDCPA.

The second Ninth Circuit case of significance is Slenk v. Transworld Systems, Inc., 236 F.3d 1072 (9th Cir. 2001). The plaintiff therein was the owner and sole employee of a general contracting firm, but obtained a credit union loan in his individual capacity to purchase a backhoe. The backhoe was used only to build plaintiff's family home. He sold it immediately afterwards. Plaintiff's firm was not licensed to use a backhoe, and never used it. However, the purchase invoice for the backhoe listed the firm, rather than plaintiff, as the purchaser; consequently, the lower sales tax rate for business purchases was assessed on the sale. Moreover, the city building permit for the home showed the firm as the building contractor, thereby streamlining the permitting process. Eventually, the loan for the backhoe went unpaid, and was eventually assigned to the defendant collection agency. The district court granted summary judgment to defendant, on the grounds that the loan was for commercial use, and therefore was not a "debt" under 15 U.S.C. § 1692a(5). The appeals court reversed, holding that there was a genuine issue of material fact as to whether the loan was in fact "primarily for personal, family, or household purposes." Id. at 1075. According to its opinion, the Ninth Circuit's intent was to "elevate substance over form" in assessing whether an obligation is a "debt" under section 1692a(5). Id. Courts "must therefore 'look

7

to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'" Id. (quoting Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999)).

A third Ninth Circuit decision, Turner v. Cook, 362 F.3d 1219 (9th Cir. 2004), also bears on the present inquiry. Certain of the Turner defendants had previously obtained a $1,000,000 tort judgment (on grounds of business interference) against one of the plaintiffs, and then retained the other defendants (an attorney and his law firm) to assist in collecting thereon. Plaintiffs eventually sued over the ensuing collection efforts, alleging, *inter alia*, FDCPA violations. The district court dismissed these claims on the grounds that the tort judgment was not a "debt" within the meaning of the FDCPA. The Ninth Circuit panel affirmed, basing its decision on an analysis of the term "transaction" in the statutory definition in section 1692a(5) ("any obligation or alleged obligation of a consumer to pay money arising out of a *transaction* in which the money, property, insurance, or services which are the subject of the *transaction* are primarily for personal, family, or household purposes"). The Ninth Circuit panel embraced the reasoning of the Eleventh Circuit in Hawthorne v. Mac Adjustment, Inc., which held that "a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." 140 F.3d 1367, 1371 (11th Cir. 1998). The Turner court concluded that, as the plaintiffs' judgment debt was the result of a tort, and not a consumer transaction, it was not a "debt" within the meaning of the FDCPA. One sentence of Turner is particularly significant for

8

the analysis that follows: "[Defendants'] efforts are not converted into an attempt to collect a consumer debt merely because the [collection effort] involved [plaintiff's] home," *i.e.*, personal property. 362 F.3d at 1228.

Reading Bloom, Slenk, and Turner together yields the following test: a plaintiff alleging an FDCPA violation must be able to show that the obligation giving rise to the challenged collection efforts arose from a transaction, first, involving a consensual dealing, and second, the subject of which was primarily for personal, family, or household purposes. In deciding the second question, courts may look to the ostensible purpose for which the obligation was entered into, but it is the funds' actual use that is paramount. This appears to be the reading of the applicable precedents that the majority of district courts in the Ninth Circuit have followed. See, e.g., Simmonds and Narita LLP v. Schreiber, 566 F. Supp. 2d 1015 (N.D. Cal. 2008) (Illston, J.) (holding that, where business owners were sued in their personal capacity for actions undertaken when they operated a commercial enterprise, their legal bills were not for "personal" purposes).

In support of its position, defendant points to a district court order which, it argues, reads Slenk differently. Manuel v. Shipyard Holdings, No. C 01-00883, 2001 WL 1382050, 2001 U.S. Dist. LEXIS 18097 (N.D. Cal. Nov. 2, 2001) (Alsup, J.) concerns, *inter alia*, collection efforts on a $1 million loan used to purchase a property in San Francisco. The loan was secured by a lien on the subject property and backed by a Small Business Administration guaranty. The property was later sold to plaintiff

9

1   Manuel for five dollars, a price apparently attributable to
2   environmental contamination on the site. Judge Alsup ruled that
3   defendant's subsequent collection efforts on the loan were not
4   subject to FDCPA, reasoning:

> As evidenced by the Small Business Administration guaranty, Manning and James took out their loan from the Money Store primarily for business purposes. The FDCPA does not apply to business loans. [citation to Bloom.] Manuel asserts that after acquiring the property, he made it his home. But the relevant inquiry is into the purpose for which the loan was acquired, not Manuel's unilateral, unratified, after-the-fact actions. [citation to Slenk.] Shipyard Holdings' motion for summary judgment as to Manuel's FDCPA claim is granted.

2001 WL 1382050 at *6, 2001 U.S. Dist. LEXIS 18097 at *18. The "unilateral, ungratified, after-the-fact actions" described by Judge Allsup were not those of the borrowers, but the plaintiff, a subsequent purchaser who was not a party to the loan, but used the subject property for personal purposes. Manuel, then, appears to stand for the proposition that, if loan proceeds are used to secure an item for commercial purposes, a subsequent purchaser's non-commercial use of that item does not transform the loan into an FDCPA "debt." This proposition is consonant with Turner, 362 F.3d at 1228, referenced above, which held that collection efforts undertaken against personal property do not bring a non-consensual debt within the ambit of the FDCPA.

In other words, Manuel has no bearing on the issue of whether obtaining a credit card for ostensible business purposes, regardless of its subsequent use, exempts collection efforts on the ensuing credit card debt from FDCPA protection. Defendant relies on the phrase "the relevant inquiry is into the purpose

10

for which the loan was acquired, not Manuel's unilateral, unratified, after-the-fact actions" to argue that plaintiff's alleged use of a business credit card for personal, family, or household purposes does not invoke FDCPA protections. But, again, this phrase does not refer to actions taken by the original borrower, but by a subsequent owner of property purchased with the borrowed funds.

Defendant's final argument for exempting business credit cards from FDCPA coverage as a matter of law rests on the following passage in Bloom:

> [Plaintiff] correctly argues that given the small number of cases interpreting the term "debt" under the FDCPA, courts in other jurisdictions have looked for guidance to cases interpreting analogous provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 to 1693r, such as the Truth in Lending Act ("TILA"). See Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1168 (3rd Cir. 1987). When classifying a loan, courts typically "examine the transaction as a whole," paying particular attention to "the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." Tower v. Moss, 625 F.2d 1161, 1166 (5th Cir. 1980).

972 F.2d at 1068. According to defendant, Regulation Z, promulgated under TILA, does not apply to business credit cards, even if such cards are used to make personal purchases. Defendant then argues that, by analogy to Regulation Z, business credit cards, such as plaintiff's American Express card, should be categorically excluded from the FDCPA's purview.

The difficulty for defendant is that the passage quoted above from Bloom appears to stand, at most, for the proposition that, in determining whether the FDCPA applies, courts must

11

examine the transaction between lender and debtor as a whole, while paying attention to the purpose for which the credit was extended. See, e.g., Sun v. Rickenbacker Collection, No. 10-CV-01055, 2011 WL 704437, 2011 U.S. Dist. LEXIS 16742 (N.D. Cal. Feb. 18, 2011) (Koh, J.) (quoting Bloom for the proposition that the court must "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature."); Simmonds and Narita, 566 F. Supp. 2d at 1017 (same). There is no authority in Bloom, nor Slenk, 236 F.3d at 1072, nor Turner, 362 F.3d at 1219, for categorically exempting certain obligations from FDCPA protection on the basis of TILA or Regulation Z. Further, the Bloom plaintiff (rather than the defendant, as in the present case) sought to have the court apply Regulation Z; but the court explicitly refrained from doing so. Instead, the Bloom court wrote, "Thorns [v. Sundance Properties, 726 F.2d 1417 (9th Cir. 1984)] held that the factors employed by the Federal Reserve Board under Regulation Z . . . are relevant in determining whether a transaction is commercial or personal for the purposes of [TILA] . . . . Even if we were to apply the factors identified in Thorns, it would not alter our conclusion." 972 F.2d at 1069. Examining the "transaction as a whole" is consonant with the test set forth above – that plaintiffs alleging FDCPA violations must be able to show that the obligation giving rise to the challenged collection efforts arose from a transaction, first, involving a consensual dealing, and second, the subject of which was primarily for personal, family, or household purposes. The fact

1  that the obligation was extended for business purposes is
2  relevant to the inquiry, but is not, as defendant would have it,
3  dispositive. Consequently, defendant's Regulation Z-based
4  argument against FDCPA coverage is unavailing. Similarly,
5  defendant's argument that, since California's Song-Beverly Credit
6  Card Act, Cal. Civ. Code §§ 1747-1748.95, does not apply to
7  business credit cards, the Rosenthal Act must similarly be
8  excepted, also fails.

9      An opinion from the Eastern District of Virginia is directly
10 on-point. In Perk v. Worden, 475 F. Supp. 2d 565 (E.D. Va. 2007)
11 (Jackson, J.), the district court declined to dismiss an FDCPA
12 claim stemming from collection efforts on a business credit card
13 that plaintiff alleged she had used for personal, family, and
14 household purposes. Instead, Judge Jackson held that the
15 plaintiff had sufficiently alleged a "debt" to proceed under the
16 FDCPA. In reaching this holding, Judge Jackson quoted Bloom,
17 *supra*, approvingly for the propositions that "[t]he Act
18 characterizes debts in terms of end uses," and that, "[n]either
19 the lender's motives nor the fashion in which the loan is
20 memorialized are dispositive of this inquiry." 475 F. Supp. 2d at
21 569. After observing that courts have looked to analogous
22 provisions of TILA for guidance, Judge Jackson concluded that the
23 proper implication is that courts should "look[] to the substance
24 of transactions to determine whether they fall under the ambit of
25 consumer protection statutes." Id. He then noted:

26         [T]he debt at issue was not actually incurred
        until Plaintiff used the card, as opposed to
27         when Plaintiff applied for the card. By way
        of illustration, the definition of 'credit
28         card' from Regulation Z's interpretation of

13

> TILA is, 'any card . . . or other single credit device *that may be used from time to time to obtain credit*.' [citation.] The [Plaintiff's] card was not used to obtain credit until Plaintiff used it for her personal purposes; therefore, the debt was personal at the moment it was incurred . . . . Plaintiff may well have violated the terms of the corporate credit card agreement by incurring personal debt with it, but that fact, even if true, cannot change the character of the debt and take it out of the FDCPA's jurisdiction.

Id. at 569-70 (emphasis in original). While Regulation Z and TILA are referenced for purposes of "illustration," neither is central to the court's holding, which rests on the card's uses. Perk's reasoning is persuasive, and reinforces the conclusion herein. Accord Clark v. Brumbaugh & Quandahl, P.C., LLO, 731 F. Supp. 2d 915 (D. Neb. 2010) (citing Perk) ("Although [defendant] is correct in its contention that the [credit card] Account was opened . . . ostensibly for commercial purposes, the Court must focus on the nature of the debt that was incurred, and not the purpose for which the Account was opened"); Kimmel v. Cavalry Portfolio Serv., LLC, No. 10-680, 2011 WL 2039049, 2011 U.S. Dist. LEXIS 55959 (E.D. Pa. May 25, 2011) (citing Perk) ("[T]he terms of the agreement and the manner in which the card was actually used are two separate issues.").

Two further points merit mention. First, the FDCPA does not prohibit debt collection — only *unfair* debt collection. The standards imposed by the FDCPA – contacting debtors at reasonable times and places (15 U.S.C. § 1692c), avoiding threats and profanity (15 U.S.C. § 1692d), refraining from false or misleading representations (15 U.S.C. § 1692e), and so on - are not so onerous as to in any way impair lawful debt collection

14

practices. Debt collectors seeking to go beyond the FDCPA's limits to collect on alleged non-consumer debts will merely have to verify that the debts in question were not incurred primarily for personal, family, or household purposes. Placing the onus on the debt collector in this manner is consonant with the strong consumer protection policy that underlies the FDCPA. It also reflects a growing public awareness that many debt collectors have been less than diligent in verifying information about the debts that they are attempting to collect.[1]

The second point to note is that the standard applied herein cuts both ways. An individual who obtains a credit card (or other debt obligation) under the pretense that it is for personal purposes, but uses it primarily to finance business expenditures, cannot then seek the FDCPA's and/or the Rosenthal Act's protections. This, of course, is the teaching of Bloom, which concluded that "[t]he fact that a loan is informal or that the lender may have loaned the money for personal reasons does not make it a personal loan under the FDCPA." 972 F.2d at 1068.

In sum, although plaintiff herein may have ostensibly obtained the American Express card for business purposes, it does

---

[1] For example, California recently enacted Senate Bill 233, the Fair Debt Buyers Practices Act, Cal. Stats. 2013, ch. 64, which requires, among other things, that debt buyers attempting to collect consumer debts be able to provide information as to their ownership of the debt, evidence that the alleged debtor agreed to the debt in question, the debt balance at charge-off, and an explanation of post-charge-off interest and fees. Similarly, by order dated September 8, 2011, the Maryland Court of Appeal (that state's highest court) revised the Maryland Rules of Civil Procedure to require that, when suing to collect consumer debts, debt buyers provide competent evidence that the defendant in question incurred the debt, proof of its ownership, an itemization of post-charge off fees and charges, and so forth.

1  not follow as a matter of law that collection efforts on that
2  card are exempted from the FDCPA and the Rosenthal Act. An
3  inquiry must be made into what he purchased in allegedly
4  incurring an unpaid obligation. Accordingly, defendant's motion
5  for summary judgment is denied.

**B. Did defendant violate the FDCPA and Rosenthal Act?**

Having resolved the issue of law raised by defendant's motion for summary judgment, I turn to plaintiff's cross-motion, which purports to demonstrate that defendant violated the FDCPA and the Rosenthal Act.

As the moving party, plaintiff "initially bears the burden of proving the absence of a genuine issue of material fact" as to defendant's liability under both statutes. Oracle Corp., 627 F.3d at 387. Specifically, plaintiff must show that the alleged obligation which he incurred on the American Express card, and which defendant sought to collect, was incurred "primarily for personal, family, or household purposes," and is therefore a "debt" within the meaning of the FDCPA.

Plaintiff is unable to meet his burden on summary judgment, as there is a genuine dispute as to the purposes for which the American Express card was used.

Plaintiff's sole evidence regarding the purposes for which the card was used consists of the following statements, made in his affidavit:

> 2. I made purchases on the American Express TrueEarnings Business card for items such as gas from Costco, books from Amazon.com, a bar tab, and possibly business related expenses as well.

16

> 3. Based on my credit card statements and my own personal knowledge the purchases made on the American Express TrueEarnings Business card were primarily for personal, family, and household purposes. (Davis Affidavit ¶¶ 2-3, ECF No. 43-5.)

In response, defendant proffers plaintiff's deposition testimony that plaintiff's wife owned her own business as a self-employed real estate agent for approximately one year in 2002 or 2003 (Davis Depo. 21:1-10, ECF No. 37-1); that the American Express card was applied for under the auspices of that business (Davis Depo. 24:11-21, 26:1-8); that plaintiff and his wife used the card for personal purposes, but could have used it for business purposes (Davis Depo. 26:12-19, 27:25-28-7); that, while plaintiff had other credit cards at the time, his wife only used the American Express card (Davis Depo. 30:4-13); and that plaintiff does not have statements regarding the American Express card (Davis Depo. 32:1-3). Considered as a whole, particularly in light of plaintiff's affidavit that the card was "possibly [used for] business related expenses as well," these statements are sufficient to create a triable issue of material fact as to whether the amount which plaintiff allegedly owed on the American Express card was traceable primarily to business purposes, rather than to personal, family, and household purposes. At summary judgment, "the judge does not weigh conflicting evidence with respect to a disputed material fact [or] make credibility determinations with respect to statements made in affidavits . . . or depositions. These determinations are within the province of the factfinder at trial . . . . If direct evidence produced by the moving party conflicts with direct

17

evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., Inc., 809 F.2d at 630-31. As defendant has demonstrated a genuine dispute as to whether the amount plaintiff allegedly owed on the American Express card was a "debt" under 15 U.S.C. § 1692a, plaintiff's cross-motion for summary judgment must be denied.[2]

Based on the foregoing, the court need not reach defendant's argument that it should not be held liable under the bona fide error affirmative defense available under the FDCPA, 15 U.S.C. § 1692k(c), and the Rosenthal Act, Cal. Civ. Code § 1788.30(e).

**IV.  CONCLUSION**

In light of the foregoing, the court hereby orders as follows:

[1] Defendant's motion for summary judgment is DENIED.

[2] Plaintiff's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED:   September 11, 2013.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[2] For the purposes of this motion, the court need not reach the interesting question of what the adjective "primarily," as used in 15 U.S.C. § 1692a(5), means in the context of a credit card debt. Research has failed to uncover any case law addressing the proper method of classifying an obligation to pay a credit card debt that was incurred in part for personal, family, or household purposes, and in part for business or commercial purposes. At least one district court in the Ninth Circuit has found that "the determination of whether a debt is incurred 'primarily for personal, family, or household purposes' is a fact driven one, and should be decided on a case-by-case . . . basis looking at all relevant factors." Hansen v. Ticket Track, Inc., 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003). This approach appears sound.

18