1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  MICHAEL DAVIS,                    No. CIV. S-12-3107 LKK/AC

12            Plaintiff,

13       v.                           **ORDER**

14  HOLLINS LAW, A PROFESSIONAL
    CORPORATION,
15
              Defendant.
16

17       Plaintiff Michael Davis sued defendant Hollins Law, A

18  Professional Corporation, alleging violations of the federal Fair

19  Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692p

20  ("FDCPA") and California's Rosenthal Fair Debt Collection

21  Practices Act, Cal. Civ. Code §§ 1788 - 1788.33 ("Rosenthal

22  Act"). The gravamen of plaintiff's complaint was that defendant

23  placed collection calls to his home phone, and left a voicemail

24  message which failed to disclose that the communication was from

25  a debt collector, thereby violating both statutes.

26       On April 15, 2014, a bench trial was held in this matter,

27  where plaintiff was represented by Matthew Rosenthal, and

28  defendant by Kathleen Hollins and Tamara Heathcote.  At the

                                  1

1    trial's conclusion, the court found that defendant had violated

2    the FDCPA and the Rosenthal Act. The court deferred its ruling on

3    damages, and directed plaintiff to file a petition for attorney's

4    fees. The court will now turn to these issues.

5    **I.    DAMAGES**

6        Plaintiff seeks statutory damages of $1000.00 under each of

7    the FDCPA and the Rosenthal Act, for a total of $2000.00.[1]

8                   **A. Damages under the FDCPA**

9                       **1. Standard**

10       The FDCPA provides for statutory damages. "[A]ny debt

11   collector who fails to comply with any [FDCPA] provision . . .

12   with respect to any person is liable to such person in an amount

13   equal to the sum of . . . any actual damage sustained by such

14   person as a result of such failure [and] in the case of any

15   action by an individual, such additional damages as the court may

16   allow, but not exceeding $1,000 . . . ." 15 U.S.C. § 1692k(a)(1),

17   (2)(A). The Ninth Circuit has held that courts must award FDCPA

18   statutory damages on proof of violation. "The FDCPA's statutory

19   language makes an award of fees mandatory." Camacho v. Bridgeport

20   Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citing Tolentino

21   ────────────────────

22   [1] Courts have typically interpreted both Acts as providing
     statutory damages on a per-lawsuit, not a per-violation, basis.
     See, e.g., Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d

23   1222, 1238 (C.D. Cal. 2007) ("The jury's decision to award $1,000
     in statutory damages per violation, rather than per lawsuit, is a

24   manifest error of law."); Marseglia v. JP Morgan Chase Bank, 750
     F. Supp. 2d 1171, 1180 (S.D. Cal. 2010) ("After a careful review

25   of the authority cited, as well as the authority unearthed by
     this Court's own research, this Court agrees with defendant that

26   statutory damages under the Rosenthal Act are limited to $1,000
     per plaintiff, not per violation."). Plaintiff makes no argument

27   to the contrary.

28

                                2

1  v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995), cert. denied, 515
2  U.S. 160 (1995)). No proof of actual damages is required to
3  support an award of statutory damages. Baker v. G.C. Servs.
4  Corp., 677 F.2d 775, 780 (9th Cir. 1982). Plaintiff seeks only
5  statutory damages herein.

6      In determining the amount of statutory damages, "the court
7  shall consider, among other relevant factors . . . the frequency
8  and persistence of noncompliance by the debt collector, the
9  nature of such noncompliance, and the extent to which such
10 noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b).

11                    **2. Analysis**

12     No evidence was introduced to suggest that defendant's
13 violation was anything other than a one-time occurrence. To the
14 extent that the frequency and persistence of noncompliance is a
15 factor, a *de minimis* award appears appropriate.

16     Similarly, the nature of the violation – omitting a required
17 disclosure from a voicemail, itself left only after the parties
18 had already communicated several times – also does not support a
19 significant award, as the court can discern no harm to plaintiff
20 from the act. Contrast, e.g., Miranda v. Law Office of D. Scott
21 Caruthers, No. 1:10-cv-01487-BAM, 2012 WL 78236, 2012 U.S. Dist.
22 LEXIS 2866 (E.D. Cal. Jan. 10, 2012) (awarding $1000.00 in
23 statutory damages on the basis of a collection letter that read
24 "NOTICE OF PENDING COURT PROCEEDINGS," when in fact no lawsuit
25 was pending.); Bretana v. Int'l Collection Corp., No. C 07-5934
26 JF (HRL), 2010 WL 1221925, 2010 U.S. Dist. LEXIS 27786 (N.D. Cal.
27 Mar. 24, 2010) (awarding $1000.00 in statutory damages where
28 "[d]efendants sent multiple letters to [plaintiff], citing

1  liability for interest and fees that did not apply, and

2  improperly sued [plaintiff] in a California state court.").

3      Finally, while there is nothing in the record to suggest

4  that the violation was intentional, the fact that defendant is a

5  law firm, and that the statutory provision in question is so

6  easily followed,[2] suggests that defendant ought to have exercised

7  a higher degree of diligence in policing its employees.

8      In light of the foregoing, the court will award plaintiff

9  $250.00 in statutory damages under the FDCPA.

10                     **B. Damages under the Rosenthal Act**

11      The Rosenthal Act, like the FDCPA, provides for both actual

12  and statutory damages. But unlike the FDCPA, the Rosenthal Act

13  premises any award of statutory damages on the defendant's state

14  of mind:

15              Any debt collector who **willfully and**
              **knowingly** violates this title with respect to
16          any debtor shall, in addition to actual
              damages sustained by the debtor as a result
17          of the violation, also be liable to the
              debtor only in an individual action, and his
18          additional liability therein to that debtor
              shall be for a penalty in such amount as the
19          court may allow, which shall not be less than
              one hundred dollars ($100) nor greater than
20          one thousand dollars ($1,000).

21

22  Cal. Civ. Code § 1788.30(b). <u>Accord</u> <u>Yu v. Signet Bank/Virginia</u>,

23  69 Cal. App. 4th 1377, 1395-96 (1999) ("The [Rosenthal] Act

24  provides for recovery in an individual action of . . . a fine of

25

26  _____

27  [2] To wit: "The following conduct is a violation of this
    section: . . . the failure to disclose in subsequent
    communications that the communication is from a debt
28  collector . . . ." 15 U.S.C. § 1692e(11).

4

1  $100 to $1,000 if the creditor's violation is willful and

2  knowing.") (citing Cal. Civ. Code § 1788.30(b)).

3      At trial, plaintiff failed to show, by a preponderance of

4  the evidence, that defendant acted "wilfully and knowingly" in

5  leaving the subject voicemail. Accordingly, plaintiff is not

6  entitled to statutory damages under the Rosenthal Act.

7  **II.   PLAINTIFF'S BILL OF COSTS**

8      Plaintiff has filed a bill of costs, seeking $2,392.90 in

9  litigation costs. (ECF No. 90.) Under Local Rule 292(b), a bill

10  of costs may only be filed and served "[w]ithin fourteen (14)

11  days after entry of judgment or order under which costs may be

12  claimed . . . ." Defendant is correct in noting that the court

13  reserved its ruling on damages when trial ended. (Response to

14  Petition for Attorney's Fees and Costs ("Response") 19-21, ECF

15  No. 96.) The U.S. Supreme Court has "long held that an order

16  resolving liability without addressing a plaintiff's requests for

17  relief is not final." <u>Riley v. Kennedy</u>, 553 U.S. 406, 419 (2008).

18  <u>Accord</u> Charles Alan Wright & Arthur R. Miller, 15B <u>Federal</u>

19  <u>Practice and Procedure: Jurisdiction</u> § 3915.2 (2d ed. 2014)

20  ("Determinations of liability that leave unresolved questions of

21  remedy ordinarily are not final . . . .").

22      As the judgment herein will be final only upon entry of this

23  order, plaintiff's bill of costs will be denied, without

24  prejudice, as premature. After this order issues, plaintiff may

25  submit a costs bill in accordance with Local Rule 292 and other

26  applicable federal law.

27  ///

28

**III. ATTORNEY'S FEES**

Plaintiff, as prevailing party, seeks $46,334.20 in attorney's fees under the FDCPA and the Rosenthal Act.

### A. Standard

The prevailing party in an FDCPA action may recover reasonable attorney's fees, and costs, from the other side. 15 U.S.C. § 1692k(a)(3). "The FDCPA's statutory language makes an award of fees mandatory." Camacho, 523 F.3d at 978. The purpose of the fee-shifting provision is to ensure private enforcement of the statute. Baker, 677 F.2d at 780-81 ("[T]he [FDCPA's] legislative history shows that Congress clearly intended that private enforcement actions would be the primary enforcement tool of the Act."); see also Tolentino, 46 F.3d at 651 ("The reason for mandatory fees is that [C]ongress chose a 'private attorney general' approach to assume enforcement of the FDCPA.").

Under Ninth Circuit precedent, district courts are to employ the "lodestar" method in determining reasonable attorney's fees in FDCPA cases. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001). The "lodestar" is derived by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Id. "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." Chalmers v. City of

1  Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing Hensley

2  v. Eckerhart, 461 U.S. 424, 433-34 (1983)). "In determining a

3  reasonable hourly rate, the district court should be guided by

4  the rate prevailing in the community for similar work performed

5  by attorneys of comparable skill, experience, and reputation."

6  Id. at 1210-11 (citing Blum v. Stenson, 465 U.S. 886 (1984)).

7         "Although in most cases, the lodestar figure is

8  presumptively a reasonable fee award, the district court may, if

9  circumstances warrant, adjust the lodestar to account for other

10  factors which are not subsumed within it." Ferland, 244 F.3d at

11  1149 n. 4.

12         The Rosenthal Act also provides for an award of attorney's

13  fees and costs to the prevailing party, which "shall be entitled

14  to costs of the action. Reasonable attorney's fees, which shall

15  be based on time necessarily expended to enforce the liability,

16  shall be awarded to a prevailing debtor." Cal. Civ. Code

17  § 1788.30.[3] Courts determining awarding attorney's fees under the

18  Rosenthal Act also employ the lodestar method. See Komarova v.

19  Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324 (2009).

20                    **B. Reasonableness of Hourly Rate**

21                        **1. Attorney rates**

22         Plaintiff has submitted time records for work billed on this

23  case by five attorneys: Matthew Rosenthal, Douglas Baek, Jessica

24  

25  [3] Despite plaintiff's failure to secure any Rosenthal Act damages,
    he was the prevailing debtor, as he established a violation of

26  Cal. Civ. Code § 1788.17, which incorporates many FDCPA
    provisions (including 15 U.S.C. § 1692e(11), which defendant

27  violated) by reference, thereby turning violations of these
    provisions into Rosenthal Act violations.

28

                                    7

Pascale, and Rory Leisinger, for each of whom plaintiff claims an hourly rate of $290 per hour, and Ryan Lee, for whom plaintiff claims an hourly rate of $387 per hour.[4] Defendant does not object to the hourly rates claimed by these attorneys.

According to plaintiff, Rosenthal was admitted to practice in California in December 2011 (Decl. Rosenthal ¶ 2, ECF No. 91-2), while Lee was admitted in March 2004 (Decl. Lee ¶ 2, ECF No. 91-2). Plaintiff does not specify when Baek, Pascale, and Leisinger were admitted, but a search of the State Bar of California website shows that they were admitted in December 2008, February 2009, and August 2011, respectively.[5] The billing records submitted by plaintiff therefore show that, when they last worked on this case, Baek had 4.5 years of experience, Pascale had 4 years of experience, and Leisinger had 2 years of experience.

In support of the claimed rates, plaintiff has submitted the declarations of Steven Solomon, Nicholas Bontrager, Todd Friedman, G. Thomas Martin III, and James Pacitti, all California attorneys who aver that they are experienced in consumer litigation. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

---

[4] According to plaintiff, Baek, Pascale, and Leisinger are no longer employed by plaintiff's counsel. (Plaintiff's Petition at 7 n. 4, ECF No. 91.)

[5] The court may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar. These facts can be "accurately and readily determined" from the website, and the site's accuracy regarding this information "cannot reasonably be questioned." Fed. R. Evid. 201(b).

1   determinations in other cases, particularly those setting a rate

2   for the plaintiffs' attorney, are satisfactory evidence of the

3   prevailing market rate." United Steelworkers of America v. Phelps

4   Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

5         In support, plaintiff also submits a recent order in Castro

6   v. Commercial Recovery Sys., No. 12-cv-00630 (N.D. Cal. Mar. 13,

7   2014) (ECF No. 91-5), awarding Lee $387 per hour.

8         Plaintiff also relies on the United States Consumer Law

9   Attorney Fee Survey Report 2010-2011, compiled by Ohio-based

10  attorney Ronald L. Burdge. (ECF No. 91-3.) According to the

11  Survey Report, attorneys practicing consumer law in California

12  for 1-3 years (e.g., attorney Leisinger) have an average hourly

13  rate of $237, those practicing for 3-5 years (e.g., Baek and

14  Pascale) have an average hourly rate of $347, and those who have

15  practiced for 6-10 years (e.g., attorney Lee) have an average

16  hourly rate of $387. (Id. at p. 24 of 67.) The court has reviewed

17  the methodology underlying the Survey, and finds it credible.

18  (Id. at pp. 9-11 of 67.)

19        District courts in California have differed on the

20  appropriateness of considering the Survey Report when determining

21  fee awards. In recent years, the majority have been willing to

22  consider the Report's results as evidence of prevailing hourly

23  rates in FDCPA and Rosenthal Act cases. See Brown v. Mandarich

24  Law Grp., No. 13-cv-04703-JSC, 2014 WL 1340211, 2014 U.S. Dist.

25  LEXIS 47020 (N.D. Cal. Apr. 2, 2014); Delalat v. Syndicated

26  Office Sys., No. 10CV1273-DMS(NLS), 2014 WL 930162, 2014 U.S.

27  Dist. LEXIS 33756 (S.D. Cal. Jan. 23, 2014); Crawford v. Dynamic

28  Recovery Servs., No. 13cv1328 BTM (RBB), 2014 WL 130458, 2014

U.S. Dist. LEXIS 4057 (S.D. Cal. Jan. 10, 2014); <u>Garcia v.</u>
<u>Resurgent Capital Servs.</u>, No. C-11-1253 EMC, 2012 WL 3778852,
2012 U.S. Dist. LEXIS 123889 (N.D. Cal. Aug. 30, 2012); <u>Ramirez</u>
<u>v. N. Am. Asset Servs., LLC</u>, No. CV 11-10237-GHK, 2012 WL
1228086, 2012 U.S. Dist. LEXIS 54641 (C.D. Cal. Apr. 9, 2012);
<u>Krapf v. Nationwide Credit Inc.</u>, No. SACV 09-00711 JVS (MLGx),
2010 WL 4261444, 2010 U.S. Dist. LEXIS 116689 (C.D. Cal. Oct. 21,
2010).

   Not all district courts agree. A number of the California
decisions rejecting the Survey Report's results originate in this
judicial district. <u>See</u>, <u>e.g.</u>, <u>Fitzgerald v. The Law Office of</u>
<u>Curtis O. Barnes</u>, No. 1:12-cv-00071-LJO-GAS, 2013 WL 1627740,
2013 U.S. Dist. LEXIS 53642 (E.D. Cal. Apr. 15, 2013) ("The Court
finds [the Survey Report] inapposite for determining hourly rates
prevailing in the forum in which this Court sits, *i.e.,* the
Eastern District of California, Fresno Division."); <u>Branco v.</u>
<u>Credit Collections Servs.</u>, No. 2:10-cv-01242-MCE-EFB, 2011 WL
6003877, 2011 U.S. Dist. LEXIS 138329 (E.D. Cal. Dec. 1, 2011)
("Plaintiff's contention that the rates are reasonable as
evidenced by the United States Consumer Law Attorney Fee Survey
Report is unavailing because it does not take into account the
reasonable rate for attorneys in *this* district.").

   In determining whether to consider the findings of the
Survey Report, the court begins by observing that debt collectors
located in Los Angeles (such as the defendant herein), the San
Francisco Bay Area, or San Diego can freely attempt to collect
from consumers located in the Eastern District using telephone
calls, letters, credit reporting, and/or collection actions.

1    Moreover, defendants in recent FDCPA and Rosenthal Act cases

2    filed in the Eastern District regularly rely on attorneys from

3    elsewhere in the state to defend them. See, e.g., Alonso v.

4    Blackstone Fin. Grp. LLC, 962 F. Supp. 2d 1188 (E.D. Cal. 2013)

5    (defense counsel from Irvine, California); Wilson v. Gordon &

6    Wong Law Grp., P.C., No. 2:13-cv-00609-MCE-KJN, 2013 WL 6858975,

7    2013 U.S. Dist. LEXIS 180366 (E.D. Cal. Dec. 24, 2013) (defense

8    counsel from San Francisco, CA); Green v. Creditor Istus

9    Remedium, LLP, No. 1:13-cv-01414-LJO-JLT, 2013 WL 6000967, 2013

10   U.S. Dist. LEXIS 161298 (E.D. Cal. Nov. 12, 2013) (defense

11   counsel from San Diego, CA); Laugenour v. Northland Grp. Inc.,

12   No. 2:12-cv-2995-GEB-DAD, 2013 WL 3745727, 2013 U.S. Dist. LEXIS

13   98565 (E.D. Cal. Jul. 15, 2013) (defense counsel from Los

14   Angeles, CA).

15       In the court's view, consumers in the Eastern District ought

16   to enjoy similar flexibility in responding to unfair collection

17   practices that debt collectors do in defending themselves. While

18   the Ninth Circuit has observed that "[g]enerally, when

19   determining a reasonable hourly rate, the relevant community is

20   the forum in which the district court sits[,]" Prison Legal News

21   v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010), this is not

22   an absolute rule. "[R]ates outside the forum may be used if local

23   counsel was unavailable, either because they are unwilling or

24   unable to perform because they lack the degree of experience,

25   expertise, or specialization required to handle properly the

26   case." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)

27   (citation and internal quotation omitted). Moreover, as I have

28   previously noted, "To insist on awarding significantly-lower

1   hourly rates in the Eastern District than those in the other

2   judicial districts in California would discourage attorneys from

3   bringing meritorious lawsuits in this district." Adoma v. Univ.

4   of Phoenix, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012). Further,

5   "[J]udges are justified in relying on their own knowledge of

6   customary rates and their experience concerning reasonable and

7   proper fees." Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir.

8   2011). The court is informed, and takes into consideration, the

9   fact that many consumer attorneys in California, who work under

10  fee-shifting statutes such as the FDCPA, the Truth in Lending

11  Act, and the Fair Credit Reporting Act, prefer not to bring cases

12  in the Eastern District because they fear that they will be

13  shortchanged in their fees. Given the choice of two meritorious

14  cases, one of which is in the Eastern District and another

15  elsewhere in California, skilled attorneys will generally choose

16  the latter in order to safeguard their fees. The consequence, in

17  many (though not all) instances, is to leave cases in this

18  district to less-skilled attorneys. While the cost of living in

19  the Eastern District is somewhat lower than other parts of

20  California, the fact remains that the majority of consumer

21  attorneys are clustered in the coastal cities and must pay the

22  costs of living there. Forcing them to accept lower rates reduces

23  their willingness to accept cases in this judicial district, and

24  thereby tacitly weakens the protections available to consumers in

25  this part of the state relative to consumers in the rest of the

26  state. That result is unacceptable.

27      Accordingly, I will award Lee his requested rate of $387 per

28  hour, and Rosenthal, Baek, and Pacal their requested rates of

1  $290 per hour. Nevertheless, I will reduce Leisinger's rate to

2  $237 per hour, per the data in the Consumer Law Attorney Fee

3  Survey Report 2010-2011.

4  **2. Paralegal rates**

5  Plaintiff has also submitted time records for work billed on

6  this case by a paralegal, one Ricardo Teamor, for whom he claims

7  an hourly rate of $145.

8  Defendant correctly objects that plaintiff has failed to

9  present *any* evidence of Teamor's qualifications and experience.

10 This is contrary to accepted practice in fee litigation. <u>See</u>,

11 <u>e.g.</u>, <u>Garcia</u>, 2012 WL 3778852, 2012 U.S. Dist. LEXIS 123889

12 ("Payne has twelve years of experience in the legal field, and

13 Alba-Bermejo has two, and the requested rates equal their current

14 hourly rates as billed by [counsel].")

15 As a result, per defendant, there is no way for the court to

16 determine if Teamor is actually a paralegal, or else an office

17 administrator or secretary. Much of the work for which Teamor's

18 time is billed, such as preparing courtesy copies of documents

19 for the court and booking flights, is administrative or

20 secretarial in nature. The only salient evidence defendant

21 presents is a sentence in the Consumer Law Attorney Fee Survey

22 Report 2010-2011, which reads, "The average California Consumer

23 Law firm employs 1 paralegal whose median billable hourly rate is

24 $137 . . . ." (Id. at p. 51 of 67.) However, this information is

25 insufficient, standing alone, to justify the requested fees.

26 Under such circumstances, the court must deny any recovery

27 for the alleged paralegal's time.

28

1

**C. Reasonableness of Hours Expended**

2        For the purposes of calculating the lodestar figure, the

3   court has discretion in determining the number of hours

4   reasonably expended on this case. See Chalmers, 796 F.2d at 1210;

5   see also Hensley, 461 U.S. at 437 (stating that district court's

6   exercise of discretion "is appropriate in view of the district

7   court's superior understanding of the litigation and the

8   desirability of avoiding frequent appellate review of what

9   essentially are factual matters.").

10                **1. Defendant's objections to time expended**

11        According to plaintiff, his attorneys devoted a total of

12   139.8 hours to this case: 49.1 hours by Lee, 43.9 by Rosenthal,

13   32.6 by Baek, 8.7 by Pascale, and 5.5 by Leisinger. (ECF No. 91-

14   1.)

15        Defendant objects that much of this time was "duplicative,

16   unreasonable, or excessive." (Response 2.) Most of defendant's

17   objections are not well-taken. For example, defendant objects to

18   plaintiff's billing 0.3 hours apiece for preparing requests for

19   production, interrogatories, and requests for admission, and goes

20   to great lengths to show that plaintiff has propounded similar,

21   though not identical, discovery requests in other FDCPA cases.

22   (Response 3-5.) This objection is not well-taken. It is perfectly

23   reasonable to take more than 12 minutes and as much as 18 minutes

24   (*i.e.*, the time increment encapsulated when billing 0.3 hours) to

25   locate pre-existing discovery requests, modify these to reflect

26   the facts of the new case, and then read them over for internal

27   consistency. In the court's view, defendant's objections to these

28   tasks, and many others, as taking too long are simply meritless.

That said, the court has reviewed all of the time entries that defendant contests and will reduce the following tasks, which each took too much time, to 0.1 hours apiece:

| Dec 28, 2012 | 0.2 | J. Pascale | Receive ECF notice of case filed and supporting documents |
| Dec 31, 2012 | 0.3 | J. Pascale | Received ECF notice of Order setting Scheduling Conference; diaried dates and set to serve copy of Order on Defendant |
| Feb 5, 2013 | 0.2 | J. Pascale | Receive and review ECF notice of stipulation and order to extend motion hearing date |
| Mar 7, 2013 | 0.3 | J. Pascale | Received and reviewed Defendant's notice to appear by telephone or continue hearing |

In other words, Pascale will only be allowed to bill 0.4 hours, rather than 1.0 hours, for these tasks.

Plaintiff also seeks to bill the 1.5 hours devoted by local counsel Leland Moglen to plaintiff's July 5, 2013 deposition at attorney Baek's rate. This is impermissible. Moglen's time must be billed at his own rate. Therefore, 1.5 hours of Baek's time will be stricken.

Finally, defendant objects to attorney Rosenthal billing 2.0 hours for preparation of a trial brief in support of a motion for judgment as a matter of law. (Response 13.) As defendant points out, under Fed. R. Civ. P. 50, this motion is available only in a jury trial. Accordingly, this time will be stricken.

**2. Defendant's objections to venue**

According to defendant, plaintiff incurred unnecessary expenses in traveling to Sacramento when he could have filed this case in the Central District of California, where defendant is located.

1    Under 28 U.S.C. § 1391(b), a case may be properly filed

2   either in a judicial district in which defendant resides or a

3   judicial district in which a substantial part of the events or

4   omissions giving rise to the claim occurred. It was reasonable to

5   file the action in the Eastern District based on the convenience

6   to the plaintiff for deposition and trial. If defendant objected

7   to the chosen venue, it could have brought a motion to transfer

8   under 28 U.S.C. § 1404. Objecting to venue at this late date is

9   churlish.

10           **3. Defendant's arguments regarding proportionality
11               of fees and recovery**

12    Despite defendant's arguments to the contrary, the court

13   sees no basis to require proportionality in FDCPA cases between

14   the amount recovered and the amount of attorney's fees available

15   thereon. Given the relatively low value of the prescribed

16   statutory damages, and in many instances, the unavailability of

17   actual damages, imposing a proportionality requirement would

18   entirely defeat the deterrence value of FDCPA lawsuits. If debt

19   collectors who engage in unfair collection practices could be

20   assured that they could avoid both significant damages and

21   significant attorney's fees, they would have little incentive to

22   comply with the FDCPA's requirements. Wronged debtors would also

23   be less likely to find counsel absent the guarantee of fee-

24   shifting, as the damages involved are often too low to support

25   contingency-based representation. "As there rarely will be

26   extensive damages, a rule of proportionality would discourage

27   vigorous enforcement of the FDCPA." <u>Kottle v. Unifund CCR, LLC,</u>

28   __ F. Supp. 2d __, 2014 WL 243140, 2014 U.S. Dist. LEXIS 9271

1  (C.D. Cal. Jan. 13, 2014) (awarding $10,782 in attorney's fees

2  based on $2001.00 recovery). For these reasons, district courts

3  in the Ninth Circuit "have been reluctant . . . to reduce damages

4  on the basis of a low monetary recovery in FDCPA cases,

5  recognizing that [statutory] damages are capped at $1,000." De

6  Amaral v. Goldsmith & Hull, No. 12-cv-03580-WHO, 2014 WL 1309954,

7  2014 U.S. Dist. LEXIS 45730 (N.D. Cal. Apr. 1, 2014) (awarding

8  $118,978.30 in attorney's fees and costs on recovery of $1000.00

9  in FDCPA statutory damages).

10      The court discerns no principled justification to deviate

11  from these precedents. There exists no requirement of

12  proportionality between the damages recovered and the attorney's

13  fees and costs ultimately awarded in FDCPA cases.

14          **C. Initial lodestar calculation**

15      Based on the foregoing, the initial lodestar figure in this

16  case amounts to $44,404.20, calculated as follows:

| | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Ryan Lee | 49.1 | $387 | $19,001.70 |
| Matthew Rosenthal | 41.9 | $290 | $12,151.00 |
| Douglas Baek | 31.1 | $290 | $9,019.00 |
| Jessica Pascale | 8.1 | $290 | $2,349.00 |
| Rory Leisinger | 5.5 | $237 | $1,303.50 |
| **Total** | | | **$43,824.20** |

26      Nevertheless, the court finds that a downward adjustment in

27  the lodestar amount is merited.

1

### D. Downward adjustment to lodestar

2      This case is unusual in that some portions of the litigation

3 were meritorious, while others were entirely unnecessary. If

4 either party had taken a few simple steps, the matter could have

5 concluded far sooner. How this distinction between meritorious

6 and needless activities should affect the attorney's fee award is

7 a difficult question.

8      Let us first turn to the meritorious portion. Defendant

9 initially moved to dismiss and/or strike plaintiff's Rosenthal

10 Act claim on the grounds that (i) as a law firm, it was exempt

11 from the Act, and (ii) the voicemail it left plaintiff was

12 protected activity under California's anti-SLAPP statute. See

13 Davis v. Hollins Law, 942 F. Supp. 2d 1004 (E.D. Cal. 2013). Both

14 arguments had merit and required examination, particularly the

15 first, which has been the subject of some disagreement among the

16 federal courts. See id. at 1008. In order to resolve the matter,

17 the court engaged in both statutory interpretation and examined

18 the Act's legislative history before concluding that plaintiff

19 could in fact proceed against defendant. See id. at 1010-11. In

20 the court's view, the time spent by plaintiff's counsel in

21 opposing these motions was properly spent.

22      Defendant later filed a motion for summary judgment, arguing

23 that, since the subject debt had been incurred on a business

24 credit card, the collection voicemail was beyond the ambit of the

25 FDCPA and the Rosenthal Act, which both address the collection of

26 consumer debts. See Davis v. Hollins Law, 968 F. Supp. 2d 1072

27 (E.D. Cal. 2013). This was an open question of law, and to

28 resolve it, the court had to reconcile three Ninth Circuit

1  precedents. See id. at 1076-1079. Again, any hours spent opposing
2  this motion were appropriate.

3      At this point, the inquiry becomes more complicated.
4  Plaintiff cross-moved for summary judgment, contending that
5  defendant had violated the FDCPA and the Rosenthal Act by leaving
6  him a voicemail which failed to identify defendant as a debt
7  collector. However, plaintiff failed to adduce sufficient
8  evidence to demonstrate that the subject debt had been incurred
9  "primarily for personal, family, or household purposes," rather
10 than for business expenses. See id. at 1081. As a result, a
11 triable issue of material fact as to the nature of the debt
12 remained.

13     In the court's view, this issue, of the alleged debt's
14 composition, could easily have been resolved earlier. But the
15 blame for the failure appears to lie with both parties. At trial,
16 it was evident that plaintiff had simply been unprepared for his
17 July 5, 2013 deposition. Yet it was plaintiff's deposition
18 testimony – that his wife used the subject credit card for
19 business purposes some ten years previously – that gave defendant
20 ammunition for trial. The submitted billing records show that
21 plaintiff was prepared by his attorneys for no more than 0.5
22 hours for his deposition. This was evidently far too little.
23 Counsel's failure to adequately prepare plaintiff for deposition
24 is inexcusable.

25     On the other hand, defendant could have easily requested the
26 billing statements for the subject debt from the original
27 creditor, American Express, in order to verify whether the debt
28 was primarily incurred for business purposes. If so, this case

1   could easily have been disposed of at summary judgment. And if

2   the bills instead showed that the debt was incurred "primarily

3   for personal, family, or household expenses," then defendant

4   would have been duty-bound under Fed. R. Civ. P. 11 not to argue

5   otherwise at trial, and may have settled the case.

6       In other words, both parties failed to take actions that

7   might have ended this case much earlier. Counsel's failure to

8   adequately prepare plaintiff for his deposition meant that this

9   case could not be resolved on the cross-motion for summary

10  judgment. Consequently, in order to penalize plaintiff's counsel

11  for its errors, the court will reduce the lodestar amount

12  available for the cross-motion, as follows.

13      In several instances, the court is unable to determine, from

14  the submitted time records, how many hours were spent on

15  plaintiff's cross-motion for summary judgment, as opposed to

16  plaintiff's opposition to defendant's motion. These mixed-billing

17  entries total 21.4 hours, all by attorney Lee. The court will

18  reduce this time by 50%, to 10.7 hours.

19      Plaintiff also devoted 10.0 hours preparing its reply to

20  defendant's opposition to the cross-motion for summary judgment.

21  These hours will be stricken.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

20

The final award amount, then, will be $35,813.30, broken down as follows:

|  | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Ryan Lee | 28.4 | $387 | $10,990.80 |
| Matthew Rosenthal | 41.9 | $290 | $12,151.00 |
| Douglas Baek | 31.1 | $290 | $9,019.00 |
| Jessica Pascale | 8.1 | $290 | $2,349.00 |
| Rory Leisinger | 5.5 | $237 | $1,303.50 |
| **Total** | | | **$35,813.30** |

## III. CONCLUSION

In light of the foregoing, the court hereby orders as follows:

[1] Plaintiff is AWARDED $250.00 in statutory damages under the FDCPA.

[2] Plaintiff's motion for costs is DENIED without prejudice.

[3] Plaintiff is AWARDED $35,813.30 in attorney's fees under the FDCPA and the Rosenthal Act.

IT IS SO ORDERED.

DATED:   June 10, 2014.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

21